UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADA ULMER,                                    Case No. 07-15446

            Plaintiff,                      Robert H. Cleland
v.                                            United States District Judge

COMMISSIONER OF                               Michael Hluchaniuk
SOCIAL SECURITY,                              United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 13)**

## I.     PROCEDURAL HISTORY

        A.     Proceedings in this Court

     On December 21, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Robert H. Cleland referred this matter to Magistrate Judge Mona J. Majzoub for

the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability/disability insurance benefits.  (Dkt. 2).  On January 15,

2008, this matter was reassigned to the undersigned.  (Dkt. 3).  This matter is

currently before the Court on cross-motions for summary judgment.  (Dkt. 12, 13).

B.   Administrative Proceedings

Plaintiff filed the instant claims on October 3, 2003, alleging that she became unable to work on October 10, 1997.  (Tr. at 48-50).  The claim was initially disapproved by the Commissioner on January 26, 2004.  (Tr. at 33-36). Plaintiff requested a hearing and on February 27, 2006, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Regina Sobrino, who considered the case *de novo*.  At the hearing, plaintiff amended her alleged onset date to December 16, 2002.  (Tr. at 248).  In a decision by the Appeals Council dated July 21, 2006, the ALJ found that plaintiff was not disabled.  (Tr. at 17-25).  Plaintiff requested a review of this decision on July 28, 2006.  (Tr. at 12-13).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 1-4, Tr. at 9), the Appeals Council, on October 26, 2007,

_____

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

denied plaintiff's request for review.  (Tr. at 4-7); *Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence

supports the Commissioner's determination that plaintiff is not disabled.

Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary

judgment be **DENIED**, defendant's motion for summary judgment be

**GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

Plaintiff was 53 years of age at the time of the most recent administrative

hearing.  (Tr. at 21).  Plaintiff's relevant work history included approximately 27

years as an hourly production worker and elementary school teacher.  (Tr. at 90).

In denying plaintiff's claims, defendant Commissioner considered degenerative

disc disease, degenerative joint disease, and tendonitis as possible bases of

disability.   (Tr. at 22).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

December 16, 2002.  (Tr. at 24).  At step two, the ALJ found that plaintiff's

impairments were "severe" within the meaning of the second sequential step.  (Tr.

at 22).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her previous work as an elementary teacher or production worker.  (Tr. at 23).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 23-24).

The ALJ found that the objective medical evidence demonstrated that plaintiff's conditions of degenerative disc disease, degenerative joint disease, and tendonitis imposed significant limitations on her ability to work and that she had severe impairments, as that term is defined in the applicable regulations. (Tr. at 22).  The ALJ also concluded, that plaintiff did not have an impairment or combination of impairments that meets or equals in severity the criteria of any impairment listed in Appendix 1of the regulations.

The ALJ proceeded to assess plaintiff's residual functional capacity (RFC). Noting that the medical evidence documents the existence of impairments that can reasonably be expected to produce pain, the ALJ found that the intensity, persistence and functionally limiting effects of the symptoms alleged by plaintiff before the date last insured were not fully consistent with the objective medical and other evidence of record.  (Tr. at 22).  Plaintiff had foot/ligament surgery in

Report and Recommendation
Cross-Motions for Summary Judgment
*Ulmer v. Comm'r*; No. 07-15446

2002 and heel spur excisions, but resumed weight-bearing well within 12 months. The ALJ observed that while plaintiff has reported persistent back pain, but has not had surgery and treatment measures have been conservative.  According to her treating physician, plaintiff's symptoms have worsened since the expiration of her Title II disability insured status.  Yet, as noted by the ALJ, plaintiff's activities of daily living remain fairly full.  She continues to drive, shop, do housework, run errands, read, watch television, and visit friends and relatives.  (Tr. at 22).

The ALJ concluded that consideration of all the evidence supports the conclusion that through the date last insured of December 31, 2003, plaintiff had the residual functional capacity to lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally.  According to the ALJ, plaintiff could stand/walk 2 hours in an 8 hour workday and sit up to 8 hours in an 8 hour workday, provided she had the opportunity to alternate sitting and standing at will.  The ALJ found that plaintiff could not crawl or climb ladders, ropes or scaffolds, but she could occasionally climb stairs.  Plaintiff could stoop and crouch rarely and could not reach overhead, be exposed to hazards or vibration, or operate foot or leg controls. (Tr. at 23).

The ALJ also addressed plaintiff's previous Title II application that was the subject of an unfavorable administrative law judge decision issued on August 8,

2001.  (Tr. at 23).  The Appeals Council denied review and the August 2001
decision was administratively final.  The ALJ noted that where a final decision
after a hearing on an earlier disability claim contains a finding of a claimant's
residual functional capacity, the administrative law judge may not make a different
finding in adjudicating a subsequent disability claim (with an unadjudicated period
arising under the same title of the Act as the prior claim) unless new and
additional evidence or changed circumstances provide a basis for a different
finding.  (Tr. at 23, citing, Social Security Acquiescence Ruling 98-4(6),
*Drummond v. Comm'r of Social Security*, 126 F.3d 837 (6th Cir. 1997)).  The
earlier file was requested, but not furnished to the hearing office and no copy of
the August 2001 decision was available to the ALJ.  Accordingly, the ALJ
concluded that she was not precluded from finding that plaintiff had the residual
functional capacity described above before her last date insured.  (Tr. at 23).

Based on the expert vocational analysis, the ALJ found that the above
limitations precluded plaintiff from performing her past relevant work as an
elementary school teacher or production worker/assembler.  Thus, the burden
shifted to the Social Security Administration to show that other jobs existed in
significant numbers in the national economy before plaintiff's date last insured
that she could have performed, consistent with her residual functional capacity and

vocational factors.  Plaintiff was born on June 23, 1952 and has a Bachelor of Science degree.  The vocational expert (VE), confirmed at the hearing that the claimant acquired work skills that are transferable to work compatible with the above limitations. The transferable skills include teaching/instruction skills, record keeping, and supervising children. The vocational expert was asked to assume an individual of plaintiff's age, education, and past relevant work with the residual functional capacity as found by the ALJ.  The VE testified that the hypothetical individual could perform 15,000 light, semiskilled teacher aid jobs, as well as the several unskilled light jobs, existing in the regional economy.  (Tr. at 23).

      B.     <u>Parties' Arguments</u>

          1.     Plaintiff's claims of error

According to plaintiff, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's decision because each element of the hypothetical posed does not accurately describe plaintiff in all significant, relevant respects.  (Dkt. 12, p. 7).  At the hearing, the VE testified that an individual like plaintiff could not perform her past relevant work, but that there were light jobs to which her teaching skills would transfer, as well as other light unskilled jobs. (Dkt. 12, p. 7, citing, Tr. at 260-261, 264).  If that person were restricted to lifting,

carrying, pushing, or pulling no more than 10 pounds, then a person like plaintiff could not perform those light duty jobs. (Dkt. 7, p. 8, citing, Tr. at 265-266).

According to plaintiff, while the ALJ discusses Dr. Musson's December 16, 2002 office note, "the most important part of that office note is not mentioned nor discussed and it is the reason this date was chosen as the amended onset date." (Dkt. 12, p. 8, citing Tr. at 22). Plaintiff relies on Dr. Musson's discussion of a functional capacity evaluation performed on June 6, 2000, which apparently indicated that plaintiff had a low "work tolerance." The doctor who performed the June 6, 2000 FCE apparently opined that plaintiff "was unable to tolerate anything more than a few hours total of work per day with significant limitations of positioning changing, sitting to standing continually, overhead reaching, bending, squatting, repetitive activities or lifting [greater than] 10 [pounds] occasionally." (Dkt. 12, p. 8, citing, Tr. at 163). Plaintiff also points to the part of Dr. Musson's note, reflecting that the January 23, 2001 EMG was worse than the January 1999 study. (Dkt. 12, p. 8, citing, Tr. at 163). On February 23, 2006, Dr. Musson reported that plaintiff could lift, carry, push and pull 10 pounds, stand less than 2 hours, and sit less than 6 hours. He further indicated that plaintiff had severely limited abilities to pull, push, and operate hand or foot controls. According to Dr.

Musson, plaintiff's limitations have existed since 1995 and began worsening in 2004.  (Dkt. 12, pp. 8-9, citing, Tr. at 22).

Plaintiff argues, based on the above records, that the ALJ's discounting of the treating physician evidence did not follow 20 C.F.R. § 404.1527(d).  (Dkt. 12, pp. 9-11).  Plaintiff urges the Court to find that the ALJ should have accepted Dr. Musson's Medical Source Statement, which is consistent with a reduced range of sedentary work as indicated in the June 2000 FCE.  (Dkt. 12, p. 11).  Further, according to plaintiff, given her amended onset date of December 16, 2002, which is after her 50th birthday, and given that her treating physician limited her to a reduced range of sedentary work, the ALJ should have concluded that she was limited to sedentary work and would, therefore, have no transferrable skills in the instant case.  (Dkt. 12, pp. 11-12, citing, Tr. at 264, 266).

2.      Commissioner's counter-motion for summary judgment

According to the Commissioner, plaintiff inappropriately focuses her argument on the fifth step of the Commissioner's sequential disability evaluation, "apparently seeking some strategic advantage by virtue in the shift in the burden of production from the Claimant to the Commissioner at that step."  (Dkt. 13). The Commissioner argues that the substance of plaintiff's argument is, in reality, based on the ALJ's weighing of the medical evidence and his determination of

plaintiff's RFC, which is part of step four, and on which plaintiff bears the ultimate burden of proof.

The Commissioner also disputes plaintiff's reliance on Dr. Musson's December 2002 office note, referring to the June 2000 FCE.  (Dkt. 13).  According to the Commissioner, plaintiff's argument ignores the undisputed fact that she was already administratively determined to be not disabled through August 8, 2001. (Dkt. 13, citing, Tr. at 23, 231).  Thus, the FCE was "clearly inconsistent with an administrative decision Plaintiff has not appealed and which stands as res judicata for the period" in which the opinion was issued.  (Dkt. 13, p. 11).  Moreover, the Commissioner argues that because plaintiff failed to submit the FCE itself in support of the disability claim that is now on appeal, the Court should reject plaintiff's "premise that a finding of disability should have been made based on that absent opinion via a few sentences in an uncritical office note from Dr. Musson, which contained no independent clinical findings or substantive medical opinion."  *Id*.

The Commissioner also argues that the ALJ properly rejected Dr. Musson's February 2006 opinion suggesting that plaintiff had been limited to less than sedentary work since "1995.  Beginning in 2004 – worsened."  (Dkt. 13, p. 11, citing, Tr. at 214).  According to the Commissioner, Dr. Musson's opinion was

Report and Recommendation
Cross-Motions for Summary Judgment
*Ulmer v. Comm'r*; No. 07-15446

conclusory and not supported by his own treatment notes or the findings of the treating specialists. Indeed, plaintiff's treating orthopedic surgeon, Dr. Katcherian, reported during the relevant period that plaintiff experienced improvement in her condition after the February 2002 surgery. (Dkt. 13, p. 12, citing, Tr. at 176, 179, 180). And, while Dr. Musson opined that plaintiff's limitations had persisted since 1995, plaintiff testified that she has had difficulty walking only since 2004. (Dkt. 13, citing, Tr. at 252).

Finally, the Commissioner argues that plaintiff's activities of daily living – cooking, cleaning, laundry, grocery shopping, visiting with friends, taking out the trash, going to church, and driving her car – were inconsistent with (1) her back pain complaints; and (2) her allegedly debilitating problems with her right foot, particularly given that, while driving, plaintiff regularly had to push on the accelerator and break pedal, contrary to Dr. Musson's opinion that she was severely limited from such pushing. Based on the foregoing, the Commissioner argues that the ALJ reasonably concluded that, while plaintiff was significantly limited by her impairments, she was not precluded from performing the limited range of work set forth in the RFC finding. (Dkt. 13, p. 13).

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

           1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work
experience.

Step Four: If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

        2.     Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." Wilson, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" Dent v. Astrue, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." Smith v. Comm'r of Social Security, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" Adams v. Massanari, 55 Fed.Appx. 279, 284 (6th Cir. 2003). The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental

impairment need not be given less weight than that of a psychiatrist. *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

C.    Analysis and Conclusions

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 23). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). After review of the record, I conclude that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to plaintiff's claim. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474

F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence

supports the ALJ's decision, it must be upheld.

1.      Treating physician evidence

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision

denying benefits "must contain specific reasons for the weight given to the

treating source's medical opinion, supported by the evidence in the case record,

and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for

that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a

treating physician should be given controlling weight if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "not

inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378

F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

Plaintiff's argument that the ALJ did not give appropriate weight to Dr. Musson's opinion hinges on Dr. Musson's December 16, 2002 office note, which mentions a functional capacity evaluation performed on June 6, 2000. The doctor who performed the June 6, 2000 FCE apparently opined that plaintiff "was unable to tolerate anything more than a few hours total of work per day with significant limitations of positioning changing, sitting to standing continually, overhead reaching, bending, squatting, repetitive activities or lifting [greater than] 10

[pounds] occasionally." (Dkt. 12, p. 8, citing, Tr. at 163). The undersigned agrees with the Commissioner that Dr. Musson's reference to a June 2000 FCE is insufficient to establish disability. More importantly, the substantial evidence supports the ALJ's conclusions. Plaintiff's test results relating to her back pain were essentially normal. She was fully ambulatory less than 12 months after her 2002 foot surgery. The December 31, 2003 FCE performed by a state agency examiner was consistent with the ALJ's RFC finding. (Tr. at 168-174). The state agency examiner noted that plaintiff had normal ankle strength, improved range of motion, and that her muscle strength was within normal limits. (Tr. at 168).

Plaintiff also relies on Dr. Musson's February 23, 2006 report that plaintiff could lift, carry, push and pull 10 pounds, stand less than 2 hours, sit less than 6 hours and had severely limited abilities to pull, push, and operate hand or foot controls. According to Dr. Musson, plaintiff's limitations have existed since 1995 and began worsening in 2004. (Tr. at 22). The Commissioner argues that the ALJ properly rejected Dr. Musson's February 2006 opinion suggesting that plaintiff had been limited to less than sedentary work since "1995. Beginning in 2004 – worsened." (Dkt. 13, p. 11, citing, Tr. at 214). According to the Commissioner, Dr. Musson's opinion was conclusory and not supported by his own treatment notes or the findings of the treating specialists, including plaintiff's treating

orthopedic surgeon, Dr. Katcherian, who reported during the relevant period that

plaintiff experienced improvement in her condition after the February 2002

surgery.  (Tr. at 176, 179, 180).  The Commissioner also points out that while Dr.

Musson opined that plaintiff's limitations had persisted since 1995, plaintiff

testified that she has had difficulty walking only since 2004.  (Dkt. 13, citing, Tr.

at 252).  Not only does the undersigned suggest that the ALJ properly rejected Dr.

Musson's conclusory opinion as unsupported by, and contrary to the record

evidence, but Dr. Musson's opinion suggests that plaintiff's limitations did not

begin until 2004, after the date through which she was insured.

> 2.    Residual functional capacity and credibility.

The undersigned suggests that the ALJ's decision to find plaintiff's claimed

limitations to be only partially credible is supported by the substantial evidence in

the record and properly incorporated into the RFC finding.  "The rule that a

hypothetical question must incorporate all of the claimant's physical and mental

limitations does not divest the ALJ of his or her obligation to assess credibility and

determine the facts."  *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497

(E.D. Mich. 2005).  The ALJ  is only required to incorporate the limitations that he

finds credible.  *Casey*, 987 F.2d at 1235.  This obligation to assess credibility

extends to the claimant's subjective complaints such that the ALJ "can present a

hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ reasonably concluded the intensity, persistence and functionally limiting effects of the symptoms alleged by plaintiff "before the date last insured were not fully consistent with the objective medical and other evidence of record." (Tr. at 22). For example, plaintiff underwent foot/ligament surgery in 2002 and heel spur excisions, but resumed weight bearing well within 12 months. *Id*. Further, plaintiff has reported persistent back pain, but has not had surgery and treatment measures have been conservative. *Id*.[2] While her treating physician

---

[2] The record contains references to plaintiff's refusal to follow her treating physicians recommendations for epidural injections. (Tr. at 22, 163). It is well-

reports that plaintiff's symptoms have worsened since the expiration of her Title II

disability insured status, her activities of daily living remain fairly full. Plaintiff

continues to drive, shop, do housework, run errands, read, watch television, and

visit friends and relatives. *Id*. The undersigned finds no basis for disturbing the

ALJ's RFC finding.

     3.    *Res judicata*

The ALJ concluded that she was not bound by any prior determination of

plaintiff's residual functional capacity, noting that where a final decision after a

hearing on an earlier disability claim contains a finding of a claimant's residual

functional capacity, the administrative law judge may not make a different finding

in adjudicating a subsequent disability claim (with an unadjudicated period arising

under the same title of the Act as the prior claim) unless new and additional

evidence or changed circumstances provide a basis for a different finding. (Tr. at

23). Because the August 2001 decision was not available to the ALJ,[3] she

---

established that failure to comply with a treating physician's recommendations can
undermine a claimant's credibility. *See e.g. Underwood v. Barnhart*, 2003 WL
22385681 (W.D. Tenn. 2003); *Shepherd v. Astrue*, 2008 WL 56931 (E.D. Tenn.
2008)

   [3] Providing documentation relating to the adjudication of a prior claim is
generally the claimant's responsibility, not that of defendant. *Hunt v. Comm'r of
Soc. Sec.*, 2008 WL 2858685, *2 (E.D. Mich. 2008).

concluded that she was not limited or precluded from making findings regarding

plaintiff's residual functional capacity before her last date insured, which was

December 31, 2003. (Tr. at 23). Defendant argues that the FCE was "clearly

inconsistent with an administrative decision Plaintiff has not appealed and which

stands as res judicata for the period" in which the opinion was issued. (Dkt. 13, p.

11).

Generally, principles of *res judicata* require that the administration be

bound by this decision unless a change of circumstances is proved on a subsequent

application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).

Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual

functional capacity finding] from a final decision by an ALJ or the Appeals

Council on the prior claim in determining whether the claimant is disabled with

respect to the unadjudicated period unless there is new and material evidence

relating to such a finding... ." The Sixth Circuit applies collateral estoppel to

"preclude reconsideration by a subsequent ALJ of factual findings that have

already been decided by a prior ALJ when there are no changed circumstances

requiring review." *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

Given that the earlier decision is not part of the record in this case, the Court

cannot assess whether and to what extent the ALJ was bound by any prior

determinations or findings.  The earlier decision finding that plaintiff was not disabled could have been based on the conclusion that she could perform her past relevant work or it could have been based on an RFC finding.  Given the undersigned's conclusions that the ALJ properly evaluated the treating physician evidence and properly formulated an RFC grounded in the substantial evidence in the record, whether and to what extent the ALJ *might* have been bound by a prior determination (which plaintiff failed to make part of the record) is immaterial.

### 4.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    <u>RECOMMENDATION</u>

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

V.    **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any

objections are without merit, it may rule without awaiting the response to the

objections.

<table>
<tr><td></td><td>s/Michael Hluchaniuk</td></tr>
<tr><td>Date: January 30, 2009</td><td>Michael Hluchaniuk<br>United States Magistrate Judge</td></tr>
</table>

## CERTIFICATE OF SERVICE

I certify that on January 30, 2009, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system which will send electronic
notification to the following: Francis L. Zebot, AUSA, Mikel E. Lupisella, and
Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant